313 F.3d 495
 Michael A. NEWDOW, Plaintiff-Appellant,
v.
U.S. CONGRESS; United States of America; George W. Bush, President of the United States; State Of California; Elk Grove, Unified School District; David W. Gordon, Superintendent EGUSD; Sacramento City Unified School District; Jim Sweeney, Superintendent SCUSD, Defendants-Appellees.
 No. 00-16423.
 United States Court of Appeals, Ninth Circuit.
 December 4, 2002.
 
 Michael A. Newdow, Sacramento, CA, pro se.
 Terence John Cassidy, A. Irving Scott, Porter, Scott, Weiberg & Delehant, Kristin S. Door, Paul L. Seave, United States Attorney's Office, Frank S. Furtek, Theodore Garelis, Attorney General's Office, Sacramento, CA, Robert M. Loeb, U.S. Department of Justice, Civil Division, Washington, DC, for Defendants-Appellees.
 Before: GOODWIN, REINHARDT and FERNANDEZ, Circuit Judges.
 FERNANDEZ, Circuit Judge.
 
 ORDER
 
 1
 Once we ruled on the merits of this case,[1] the United States Senate sought to intervene as a party and in that capacity to file a petition for rehearing and a petition for rehearing en banc. We deny the Motion to Intervene, but note our willingness to accept the petition and accompanying brief as an amicus brief, if the Senate consents to the latter use of its filing. Because of the respect that we owe to and have for the Senate, we are constrained to explain the reasons for our denial of intervention.
 
 
 2
 Initially, of course, we lay aside the usual intervention rule. See Fed.R.Civ.P. 24(a)(2). This case is more in line with Fed.R.Civ.P. 24(a)(1), which allows intervention as of right "when a statute of the United States confers an unconditional right to intervene." There is a special statute that applies to this motion. As relevant here, the statute first provides that the Senate Legal Counsel shall intervene or appear as amicus "when directed to do so by a resolution adopted by the Senate." 2 U.S.C. § 288b(c). There was a resolution here. See Senate Resolution 292, 107th Cong., 2d Sess. (2002), 148 Cong. Rec. S6105-06 (2002). The statute goes on to provide that Counsel shall intervene upon appropriate direction when "the powers and responsibilities of Congress under the Constitution of the United States are placed in issue," but should only do so if there is standing. See 2 U.S.C. § 288e(a). It then states:
 
 
 3
 Permission to intervene as a party or to appear as amicus curiae under § 288e of this title shall be of right and may be denied by a court only upon an express finding that such intervention or appearance is untimely and would significantly delay the pending action or that standing to intervene has not been established under section 2 of article III of the Constitution of the United States.
 
 
 4
 2 U.S.C. § 288l (a).
 
 
 5
 Because the Senate waited until we had already ruled on the merits of this case on appeal, it would be possible, even accurate, to hold that the attempt to intervene is untimely. However, under the circumstances we are unable to hold that the proposed intervention to seek rehearing or en banc review would "significantly delay" the action. Especially is that true when, as here, some of the current parties to the action have themselves already sought both types of review. We must, therefore, turn our attention to the second exception in § 288l(a) — does the Senate have constitutional standing? To put it more precisely: does the Senate have constitutional standing to intervene in every case where the constitutionality of a United States statute is challenged? Because we determine that the answer to that question is no and because there is nothing about the statute at hand that would distinguish it from other statutes, the Senate does not have standing in this case.
 
 
 6
 Let it first be said that the issue is not whether the United States has standing to appear in support of the constitutionality of the statute in question. Nobody doubts that it does. See 28 U.S.C. § 2403(a). In fact, in this case it did appear for "the Congress of the United States; the United States of America; and William J. Clinton, President of the United States."[2] The question is whether the Senate, as a separate part of the government, has standing to intervene to support statutes on its own behalf, and not really as a representative of the United States itself. We need not, and do not, decide whether Congress could designate the Senate Legal Counsel, upon a separate resolution of the Senate alone, to appear as the defender of all statutes on behalf of the United States itself. A law of that type might well have its own constitutional problems; it might even trench on the prerogatives of the executive branch of the United States, which has the authority to execute the laws of this country. See U.S. Const. art. II, § 3. At any rate, that has not occurred here. As already stated, a separate statute confers that authority upon the executive branch, and here the Senate seeks to appear to represent itself alone.
 
 
 7
 As the intervention statute at hand expressly recognizes, the Senate must show that it does have constitutional standing to intervene. That means at the very least that it must show that it has "suffered an `injury in fact' — an invasion of a legally protected interest which is ... concrete and particularized." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992); see also Raines v. Byrd, 521 U.S. 811, 818-20, 117 S.Ct. 2312, 2317-18, 138 L.Ed.2d 849 (1997). That concrete and particularized harm is lacking in this case because no harm beyond frustration of a general desire to see the law enforced as written has been shown here.
 
 
 8
 In so stating, we are aware that there have been a number of cases wherein Senate intervention has been allowed without any particular remark or detailed consideration. See, e.g., INS v. Chadha, 462 U.S. 919, 930 n. 5, 103 S.Ct. 2764, 2773 n. 5, 77 L.Ed.2d 317 (1983); Lear Siegler, Inc., Energy Prod. Div. v. Lehman, 893 F.2d 205, 206 (9th Cir.1990) (en banc); In re Benny, 812 F.2d 1133, 1135 (9th Cir.1987); see also Bowsher v. Synar, 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986). But those cases are not really apposite because they were of a character that directly (particularly) implicated the authority of Congress within our scheme of government, and the scope and reach of its ability to allocate power among the three branches. Thus, Chadha, 462 U.S. at 956-58, 103 S.Ct. at 2787, is a case that dealt with individual houses of Congress assuming the authority to review and veto executive decisions regarding the deportation of aliens. It, thus, implicated separation of powers doctrine and the whole scheme of our government. Lear Siegler dealt with whether Congress could allocate to a legislative agent — The Comptroller General — the authority to delay the procurement actions of the executive branch of the government. See Lear Siegler, Inc., Energy Prod. Div. v. Lehman, 842 F.2d 1102, 1105-06 (9th Cir.1988), vacated on other grounds, Lear Siegler, 893 F.2d at 208; see also Bowsher, 478 U.S. at 717, 106 S.Ct. at 3183. Finally, in Benny, 812 F.2d at 1141-42, the issue was whether Congress had the authority to prospectively extend the term of office of bankruptcy judges. In other words, in each of these cases the courts were dealing with a statute addressing legislative action regarding allocation of authority within the government, as opposed to action applying that authority to the behavior of the citizenry in general. The issues were the kind that intimately affected Congress's own place within our constitutional scheme.
 
 
 9
 More closely on point are cases which speak to the standing of legislators to bring actions, where their institutional power as members of the legislature is not being challenged. In Raines, 521 U.S. at 814-16, 117 S.Ct. at 2315-16, for example, a number of members of the Senate and House of Representatives sued pursuant to a provision of the Line Item Veto Act which declared that any member of Congress could challenge the Act. See, 2 U.S.C. § 692(a)(1). The Court declared that they had "alleged no injury to themselves as individuals ..., the institutional injury they allege is wholly abstract and widely dispersed..., and their attempt to litigate this dispute at this time and in this form is contrary to historical experience." Id. at 829, 117 S.Ct. at 2322. The Court did point out that they did not actually represent their separate houses of Congress and those houses actually opposed them, but did not indicate precisely how that affected their standing.[3] Id. The Court distinguished an earlier case wherein state legislators were accorded standing because their votes would have been deprived of all validity if an allegedly improper person were able to vote. See Coleman v. Miller, 307 U.S. 433, 438, 59 S.Ct. 972, 975, 83 L.Ed. 1385 (1939). Thus, at least as to individual legislators, there is no standing unless their own institutional position, as opposed to their position as a member of the body politic, is affected.
 
 
 10
 The District of Columbia Circuit has followed the same approach. In 1977, a congressman sued the director of the Central Intelligence Agency partly on the basis that when that agency misused its budget, his vote as a congressman was impaired. See Harrington v. Bush, 553 F.2d 190, 204 (D.C.Cir.1977). The court found that he lacked standing, and that a contrary rule would amount to giving him "a roving commission to obtain judicial relief under most circumstances." Id. at 214. Along the way, the court noted that "his specific rights, interests and prerogatives lie in the power to make laws. As we have noted, this power has not been invaded, diminished, diluted, or injured by the challenged actions in this case." Id. at 213. A like result was reached when a member of Congress sued to prevent alleged misuse of federal funds by a national commission. See Hansen v. Nat'l Comm'n. on the Observance of Int'l Women's Year, 628 F.2d 533 (9th Cir.1980). We said: "The injury alleged by appellant is an injury which he suffers along with all other citizens of the United States. He has not presented any facts which show he has sustained or is imminently in danger of sustaining an actual personal injury." Id. at 534. Thus, he had no standing. Id. And, when faced with a claim by congressmen that the military was using its budget to finance combat in other countries, despite laws prohibiting that, the Fourth Circuit had this to say: "Once a bill has become law, however, their interest is indistinguishable from that of any other citizen. They cannot claim dilution of their legislative voting power because the legislation they favored became law." Harrington v. Schlesinger, 528 F.2d 455, 459 (4th Cir.1975). The court was no more impressed with the claim that their legislative duties would somehow be affected. See id. Other cases have sounded the same note. See, e.g., Baird v. Norton, 266 F.3d 408, 411-12 (6th Cir.2001); Chenoweth v. Clinton, 181 F.3d 112, 112-13, 117 (D.C.Cir.1999), cert. denied, 529 U.S. 1012, 120 S.Ct. 1286, 146 L.Ed.2d 233 (2000); Daughtrey v. Carter, 584 F.2d 1050, 1057-58 (D.C.Cir.1978); Metcalf v. Nat'l Petroleum Council, 553 F.2d 176, 187-89 (D.C.Cir.1977).
 
 
 11
 These observations also apply to the Senate as a whole, when it seeks to have a roving commission to enter every case involving the constitutionality of statutes it has enacted. In those instances, its own "powers and responsibilities" are not really under attack. Once the Senate has approved a proposed bill, the House of Representatives agrees, and the President has signed the measure, it becomes public law. A public law, after enactment, is not the Senate's any more than it is the law of any other citizen or group of citizens in the United States. It is a law of the United States of America, and the government is already represented in this case by the Attorney General. Of course, every time a statute is not followed or is declared unconstitutional, the votes of legislators are mooted and the power of the legislature is circumscribed in a sense, but that is no more than a facet of the generalized harm that occurs to the government as a whole. By the same token, the President's signing of the legislation is also nullified, judges, who might have felt otherwise, are bound by the decision, and citizens who relied upon or desired to have the law enforced are disappointed.[4] Moreover, if the separate houses of Congress have standing, a challenger of a law would have to contend with fighting the United States itself, and separately defending himself against the Senate and the House of Representatives, each of which would be able to appear as a separate litigating party in the case.[5]
 
 
 12
 Therefore, the motion of the Senate to intervene is DENIED. However, if the Senate wishes to have us deem its proposed brief to be an amicus brief and to consider it on that basis, we will do that. It should inform us of its desire in that regard within 30 days after the filing of this order.
 
 
 
 Notes:
 
 
 [1]
 Newdow v. U.S. Congress, 292 F.3d 597 (9th Cir.2002).
 
 
 [2]
 Perhaps it should also be recognized that "the three branches are but `coordinate parts of one government,'" and in that sense there can be no doubt that the legislature is already represented here anywaySee United States v. Providence Journal Co., 485 U.S. 693, 701, 108 S.Ct. 1502, 1507, 99 L.Ed.2d 785 (1988) (internal citation omitted).
 
 
 [3]
 Of course, the Line Item Veto Act dealt with the allocation of power between the legislative and executive branchesSee 2 U.S.C. §§ 691-692. However, the Senate was content to appear as amicus curiae. Raines, 521 U.S. at 813 n. *, 117 S.Ct. 2312.
 
 
 [4]
 All of this is underscored by the Senate's suggestion that it should have standing because it opens its daily sessions with the Pledge of Allegiance. That, of course, is an assertion that could be made by countless other organizations, governmental and otherwise, not to mention thousands of United States citizens
 
 
 [5]
 In principle, he might also have to separately contend against the President, whose ability to effectively sign the law in question can be said to have been affected. We see little other than mischief arising from a system of intervention as unregulated as that. Constitutional standing doctrine is the apotropaion for that threatened malady. It must be applied here