# IN THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 16

**OCTOBER TERM, A.D. 2023**

**February 2, 2024**

RACHEL RODRIGUEZ-WILLIAMS,
House District Representative; CHIP
NEIMAN, House District Representative;
and RIGHT TO LIFE OF WYOMING,
INC.,

Appellants
(Proposed Intervenors),

v.

DANIELLE JOHNSON; KATHLEEN
DOW; GIOVANNINA ANTHONY,
M.D.; RENE R. HINKLE, M.D.;
CHELSEA'S FUND; and CIRCLE OF
HOPE HEALTHCARE d/b/a Wellspring
Health Access,

Appellees
(Plaintiffs),

and

STATE OF WYOMING; MARK
GORDON, Governor of Wyoming;
BRIDGET HILL, Attorney General for
the State of Wyoming; MATTHEW
CARR, Sheriff Teton County;
MICHELLE WEBER, Chief of Police,
Town of Jackson, Wyoming,

Appellees
(Defendants).

S-23-0196

*Appeal from the District Court of Teton County*
*The Honorable Melissa M. Owens, Judge*

*Representing Appellants (Proposed Intervenors) Rachel Rodriguez-Williams, House District Representative; Chip Neiman, House District Representative; and Right to Life of Wyoming, Inc.:*
> *Frederick J. Harrison, Frederick J. Harrison, PC, Cheyenne, Wyoming; Denise Harle and Timothy Garrison, Alliance Defending Freedom, Scottsdale, Arizona. Argument by Mr. Garrison.*

*Representing Appellees (Plaintiffs) Danielle Johnson; Kathleen Dow; Giovannina Anthony, M.D.; Rene R. Hinkle, M.D.; Chelsea's Fund; and Circle of Hope Healthcare d/b/a Wellspring Health Access:*
> *John H. Robinson and Marci C. Bramlet, Robinson Bramlet, LLC, Casper, Wyoming; Peter S. Modlin, Gibson Dunn & Crutcher, LLP, San Francisco, California; Megan Cooney, Gibson Dunn & Crutcher, LLP, Irvine, California. Argument by Mr. Modlin.*

*Representing Appellees (Defendants) State of Wyoming; Mark Gordon, Governor of Wyoming; and Bridget Hill, Attorney General for the State of Wyoming:*
> *Jay Jerde, Special Assistant Attorney General.*

*Representing Appellee (Defendant) Matthew Carr, Sheriff Teton County:*
> *No appearance.*

*Representing Appellee (Defendant) Michelle Weber, Chief of Police, Town of Jackson, Wyoming:*
> *No appearance.*

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Chief Justice.**

[¶1]    State Representatives Rachel Rodriguez-Williams and Chip Neiman, and Right to Life of Wyoming, Inc. (RTLW) (collectively the Proposed Intervenors) appeal the district court's denial of their motion to intervene in a lawsuit challenging the constitutionality of two Wyoming laws restricting abortion. We affirm.

### ISSUES

[¶2]    This appeal presents two issues:

> 1. Did the district court err in denying the Proposed Intervenors' motion to intervene as of right?
>
> 2. Did the district court abuse its discretion in denying the Proposed Intervenors' motion for permissive intervention?

### FACTS

[¶3]    In 2023, the Wyoming Legislature passed two laws restricting abortion. *See* Wyo. Stat. Ann. §§ 35-6-120-138; Wyo. Stat. Ann. § 35-6-139 (2023). On March 17, 2023, four individuals and two organizations (Plaintiffs) filed a complaint against the State of Wyoming; Governor Mark Gordon; Attorney General Bridget Hill; Teton County Sheriff Matthew Carr; and Jackson Chief of Police Michelle Weber. Plaintiffs challenged the constitutionality of the two laws and sought a permanent injunction enjoining their enforcement. Plaintiffs contemporaneously filed a motion for a temporary restraining order to enjoin enforcement of the laws pending the litigation's outcome.

[¶4]    On March 21, 2023, Plaintiffs filed an amended complaint. That day, the Attorney General's Office, on behalf of the State, Governor Gordon, and Attorney General Hill (the State Defendants), submitted a nearly 100-page opposition to Plaintiffs' motion for a temporary restraining order. On March 22, 2023, the district court entered the temporary restraining order. The challenged laws are therefore not being enforced pending final determination of this case.

[¶5]    On April 4, 2023, the State Defendants answered Plaintiffs' amended complaint. On April 6, 2023, the Proposed Intervenors filed a motion to intervene as of right; alternatively, they sought permissive intervention. Along with their motion to intervene, the Proposed Intervenors filed a proposed answer to the amended complaint, which in material respects mirrored the answer of the State Defendants. Plaintiffs opposed the motion to intervene. The State Defendants did not oppose the Proposed Intervenors' intervention but objected to their expressed desire for an evidentiary hearing or trial. The

1

State Defendants maintained that the constitutional challenge to the abortion laws presented purely legal questions that did not require taking evidence.

[¶6]  The district court denied the motion to intervene. It found the Proposed Intervenors timely filed their motion but otherwise did not meet the requirements for intervention as of right. The court denied permissive intervention on grounds that the State Defendants adequately represented the interests of the Proposed Intervenors and the intervention would unduly delay and prejudice adjudication of the case. The Proposed Intervenors timely appealed to this Court.[1]

## STANDARD OF REVIEW

[¶7]  This Court reviews a ruling on the timeliness of a motion to intervene for an abuse of discretion. *Int. of EHD*, 2017 WY 134, ¶ 14, 405 P.3d 222, 226 (Wyo. 2017) (quoting *Hirshberg v. Coon*, 2012 WY 5, ¶ 9, 268 P.3d 258, 260 (Wyo. 2012)). Aside from the question of its timeliness, intervention as of right presents a question of law that we review de novo. *Id.*

[¶8]  We give deference to a district court's denial of permissive intervention and review that ruling for an abuse of discretion. *Hirshberg*, 2012 WY 5, ¶ 9, 268 P.3d at 261 (quoting *Concerned Citizens of Spring Creek Ranch v. Tips Up, L.L.C.*, 2008 WY 64, ¶¶ 11-12, 185 P.3d 34, 38 (Wyo. 2008)); *see also Halliburton Energy Servs., Inc. v. Gunter*, 2007 WY 151, ¶ 9, 167 P.3d 645, 649 (Wyo. 2007) ("We review a denial of a motion for permissive intervention for an abuse of discretion, and our review is particularly deferential.") (citing *Masinter v. Markstein*, 2002 WY 64, ¶ 14, 45 P.3d 237, 242 (Wyo. 2002)); *Tri-State Generation & Transmission Ass'n, Inc. v. N.M. Pub. Regul. Comm'n*, 787 F.3d 1068, 1075 (10th Cir. 2015) (agreeing that "decisions holding that the district court abused its discretion in denying permissive intervention are predictably rare").

## DISCUSSION

[¶9]  We have summarized the W.R.C.P. 24(a)(2) requirements for intervention as of right as follows:

> First, the applicant must claim an interest related to the property or transaction which is the subject of the action.

---

[1] On appeal, the State Defendants have taken the same position they took below. They do not oppose intervention but object to the district court taking evidence. The State Defendants therefore offer no argument regarding the district court's order denying intervention and instead offer argument only on the question of whether a trial is required to resolve the legal challenges to the abortion laws. We need not address that question to resolve this appeal.

Second, the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest. Third, there must be a showing that the applicant's interest will not be adequately represented by the existing parties. Fourth, the application for intervention must be timely.

*Int. of EHD*, 2017 WY 134, ¶ 12, 405 P.3d at 225-26 (quoting *State Farm Mut. Auto. Ins. Co. v. Colley*, 871 P.2d 191, 194 (Wyo. 1994)). "An applicant who fails to meet any of the conditions of W.R.C.P. 24(a)(2) is not permitted to intervene as of right." *Halliburton*, 2007 WY 151, ¶ 6, 167 P.3d at 648 (cleaned up) (quoting *State Farm*, 871 P.2d at 194).[2]

## I.     Because the Proposed Intervenors do not have a significant protectable interest in the litigation, the district court did not err in denying their motion to intervene as of right.

[¶10]   To satisfy Rule 24(a)(2)'s interest requirement, a proposed intervenor must show "a significant protectable interest." *Tips Up*, 2008 WY 64, ¶ 17, 185 P.3d at 40 (citing *Platte Cnty. Sch. Dist. No. 1 v. Basin Elec. Power Coop.*, 638 P.2d 1276, 1279 (Wyo. 1982)). "A significant protectable interest is distinguished from a merely contingent interest, an interest shared by members of the public at large, or a mere concern in the outcome." *Id.* (citing *Halliburton*, 2007 WY 151, ¶ 6, 167 P.3d at 648); *see also Allard v. Frizzell*, 536 F.2d 1332, 1334 (10th Cir. 1976) (upholding denial on ground that movants had "no requisite specific interest, and none other than that asserted by the public generally").

## A.     RTLW does not have a significant protectable interest in the litigation.

[¶11]   RTLW claims the following concerning its interest in the challenge to the abortion laws:

Right to Life of Wyoming's core purpose is to educate the public on the value of human life—including the harms of abortion—and to advocate for laws that protect pregnant women and their unborn children. All of the organization's resources are dedicated to this mission. Indeed, Right to Life of Wyoming devoted substantial time, funds, and other resources in specifically lobbying and advocating for the

---

[2] Plaintiffs did not appeal the district court's finding that the Proposed Intervenors' motion was timely, and we therefore do not address that requirement.

statutes challenged in this case. Thus, its interest is greatly distinguishable from members of the public. The fates of these statutes are mission-critical to Right to Life of Wyoming's efficacy.

[¶12]  We do not question that RTLW has expended great effort and resources in its campaign against abortion and in favor of the legislation at issue in this case. We disagree, however, that these advocacy efforts distinguish RTLW's interests from the policy concerns held by members of the public at large. The persuasive weight of authority holds that advocating for a policy and lobbying for legislation to enact that policy does not give an individual or entity a protectable interest in a legal challenge to the subsequently enacted law.

[¶13]  For example, in *Keith v. Daley*, the Illinois Pro-Life Coalition (IPC), a lobbying organization, sought to intervene in a suit challenging the constitutionality of an Illinois statute regulating abortion. 764 F.2d 1265, 1267 (7th Cir. 1985), *cert. denied*, 474 U.S. 980 (1985). Like RTLW, IPC claimed an interest based on its advocacy for unborn children and its lobbying efforts in support of the challenged laws. *Id.* It asserted "that its 'very existence is intertwined with its ability to promote this type of legislation and to insure that such laws are adequately defended if challenged.'" *Id.* at 1269. The district court denied intervention as of right, and the Seventh Circuit upheld that denial. *Id.* at 1270. It noted that "[o]nly the defendant Attorney General and the defendant Cook County State's Attorney are required to defend and enforce the law of the state of Illinois[.]" *Id.* at 1269. It then held:

> [IPC's] purpose is essentially communicative and persuasive. IPC seeks to inform people about abortion and about IPC's preference for alternatives to abortion. IPC also seeks to lobby legislators so that its views on the protection of "the unborn" may become law. In an America whose freedom is secured by its ever vigilant guard on the openness of its "marketplace of ideas," IPC is encouraged to thrive, and to speak, lobby, promote, and persuade, so that its principles may become, if it is the will of the majority, the law of the land. Such a priceless right to free expression, however, does not also suggest that IPC has a right to intervene in every lawsuit involving abortion rights, or to forever defend statutes it helped to enact. Rule 24(a) precludes a conception of lawsuits, even "public law" suits, as necessary forums for such public policy debates.

*Id.* at 1270.

4

[¶14] Other courts have reached a similar conclusion. In *Northland Fam. Plan. Clinic, Inc. v. Cox*, a group called Standing Together to Oppose Partial–Birth–Abortion (STTOP) sought to intervene in a suit challenging a Michigan law that regulated abortion. 487 F.3d 323, 327-28 (6th Cir. 2007). STTOP was a ballot-question committee of Right to Life of Michigan, Inc., formed to promote passage of the challenged law. *Id.* at 328. It argued that as a public interest group involved in the process leading to adoption of the challenged law, it had a legal interest in the subject matter of the lawsuit. *Id.* at 344. The district court found the interest insufficient, and the Sixth Circuit agreed. *Id.* at 343-44, 346. The court held that once a statute is enacted, "the public interest in its enforceability is entrusted for the most part to the government[.]" *Id.* at 345. It thus concluded:

> After the Act's passage . . . STTOP's interest in the enforcement of the statute is greatly diminished due to the state's responsibilities in enforcing and defending it as it is written. As things now stand, STTOP's interest in this case simply pertains to the enforceability of the statute in general, which we do not believe to be cognizable as a substantial legal interest sufficient to require intervention as of right.

*Id.* at 345-46; *see also League of Women Voters Minn. v. Ritchie*, 819 N.W.2d 636, 640, 642 (Minn. 2012) (per curiam) (nonprofit organization that expended resources to get proposed constitutional amendment passed in legislature denied intervention in suit alleging error in preparation of ballot for general election); *Coal. to Def. Affirmative Action v. Granholm*, 501 F.3d 775, 780-81 (6th Cir. 2007) (groups that lobbied for ballot initiative lacked substantial legal interest in challenge to law despite court's expansive view of interest sufficient to support intervention).

[¶15] As these cases illustrate, once the abortion laws challenged in this case were enacted, the responsibility for enforcing and defending the laws shifted to the government. At that point, RTLW's advocacy for the laws and its interest in the policy underlying them became no different from or greater than that of the public at large. It thus did not have a protectable interest in the litigation challenging the laws. *Tips Up*, 2008 WY 64, ¶ 17, 185 P.3d at 40; *Allard*, 536 F.2d at 1334.

[¶16] The cases the Proposed Intervenors cite are distinguishable and thus do not compel a different conclusion. They principally rely on *Coalition of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of the Interior*, 100 F.3d 837 (10th Cir. 1996), which they argue stands for the proposition that advocacy for a cause provides the requisite interest for intervention as of right. We disagree.

[¶17] In *Coalition*, the proposed intervenor, Dr. Robin Silver, was "a commercial wildlife photographer, an amateur biologist, and a naturalist, specializing in photographing creatures in the American Southwest." 100 F.3d at 839. He petitioned the

5

United States Fish and Wildlife Service (FWS) to list the Mexican Spotted Owl as a threatened or endangered species under the Endangered Species Act (ESA), and when FWS failed to timely act on the petition, he threatened suit under the ESA's citizen lawsuit provision. *Id.* FWS eventually listed the owl as a threatened species but failed to designate critical habitat for it. *Id.* Dr. Silver and other environmental groups sued FWS and obtained an order compelling it to designate habitat. *Id.*

[¶18] While Dr. Silver's suit was pending, the Coalition of Arizona/New Mexico Counties for Stable Economic Growth filed a separate lawsuit challenging the owl's listing. *Id.* Dr. Silver moved to intervene as of right, or in the alternative, for permissive intervention, and the district court denied the motion. *Id.* The Tenth Circuit reversed. *Id.* at 846.

[¶19] In addressing the interest requirement for intervention as of right, the court held that Dr. Silver was required to show an interest in the proceedings that was "direct, substantial[,] and legally protectable." *Id.* at 840. It concluded first "that Dr. Silver's involvement with the Owl in the wild and his persistent record of advocacy for its protection amounts to a direct and substantial interest in the listing of the Owl for the purpose of intervention as of right." *Id.* at 841. The court then went on to address whether the interest was legally protectable, as required for intervention as of right, and determined it was. *Id.* First, it found the ESA gave him a legal right to protect his interest in the owl. *Id.* Next, the court observed that "the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing." *Id.* at 842 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562-63, 112 S.Ct. 2130, 2137, 119 L.Ed.2d 351 (1992)). It concluded that since Dr. Silver had independent standing to participate in the suit, he had the legally protectable interest required to intervene as of right. *Id.*

[¶20] Under the reasoning of *Coalition*, RTLW may claim a significant interest in the litigation challenging Wyoming's abortion laws based on its advocacy. That, however, is not sufficient to support intervention as of right. Under our precedent, and the holding in *Coalition*, the claimed interest must also be legally protectable. *Id.* at 846; *Tips Up*, 2008 WY 64, ¶ 17, 185 P.3d at 40. In *Coalition*, that requirement was satisfied by Dr. Silver's legal rights under the ESA and his independent standing based on his recognized aesthetic interest in observing the species he sought to protect. RTLW has pointed to no law that provides it a protectable interest in this litigation, and it has made no claim that it has independent standing to participate in the litigation. *Coalition* therefore does not support its intervention as of right.

[¶21] The Proposed Intervenors' reliance on *W. Watersheds Project v. U.S. Forest Serv. Chief*, No. 20-CV-67-F, 2020 WL 13065066 (D. Wyo. July 29, 2020) and *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893 (9th Cir. 2011) is equally unpersuasive. Both again are environmental cases in which the intervenors showed their

6

members used the resources they sought to protect; intervention as of right was not granted based solely on an intervenor's advocacy efforts. *W. Watersheds*, 2020 WL 13065066 at \*3; *Mont. Wilderness Ass'n*, 647 F.3d at 897-98; *see also WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1198 (10th Cir. 2010) ("With respect to Rule 24(a)(2), we have declared it 'indisputable' that a prospective intervenor's environmental concern is a legally protectable interest."). RTLW cites no interest that is comparable to the protectable interests recognized in these types of environmental cases.

[¶22] RTLW's reliance on *Planned Parenthood of Minn., Inc. v. Citizens for Cmty. Action*, 558 F.2d 861 (8th Cir. 1977) is also misplaced. In that case, Planned Parenthood challenged an ordinance that would have barred its clinic in the proposed location. *Id.* at 864. An organization whose professed purpose was "to preserve property values and insure that abortion facilities do not affect the health, welfare and safety of citizens" sought to intervene in defense of the ordinance. *Id.* at 869. The application for intervention was joined by two couples who lived in the vicinity of the proposed clinic. *Id.* The district court denied the motion to intervene, and the Eighth Circuit reversed. *Id.* In concluding that the intervenors had a protectable interest in the litigation, the court found that the "litigation, which will establish the validity or invalidity of the ordinance, necessarily bears directly on the property interests the applicants seek to preserve." *Id.* Again, the protectable interest in that case went well beyond advocacy for a particular policy or law.

[¶23] The same is true of *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240 (6th Cir. 1997). In that case, the Michigan Chamber of Commerce sought to intervene in a challenge to an election finance law for which it lobbied. *Id.* at 1243-44. The district court denied intervention, and the Sixth Circuit reversed. *Id.* at 1243. In considering whether the Chamber had a legally protectable interest, the court noted the Chamber's advocacy efforts, but it also relied on the fact that the Chamber had thousands of corporate members who were subject to regulation under the law. *Id.* at 1243, 1247. In a later case, the Sixth Circuit clarified that advocacy for a challenged law is not in itself a protectable interest for purposes of intervention; it observed that the pivotal consideration in *Miller* was the fact that the Chamber's members were subject to regulation under the challenged law. *Granholm*, 501 F.3d at 782. RTLW is not subject to regulation under the abortion laws, and *Miller* therefore does not support its position.

[¶24] The only cases RTLW cites that hold intervention should have been permitted based on advocacy interests alone are three decisions by the Ninth Circuit Court of Appeals. *See Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525 (9th Cir. 1983) (conservation groups should have been allowed to intervene based on advocacy for bird conservation area and participation in process to have area designated); *Wash. State Bldg. & Constr. Trades Council v. Spellman*, 684 F.2d 627 (9th Cir. 1982) (sponsor of radioactive waste initiative should have been allowed to intervene based on its interest in law); *State of Idaho v. Freeman*, 625 F.2d 886 (9th Cir. 1980) (National Organization of

Women should have been allowed to intervene in suit challenging procedure for ratification of ERA based on its interest in the continued viability of ERA). We find these cases unpersuasive because they contain no reasoning to explain how such advocacy interests differ from those of the public generally. This is important because courts are not political forums for these types of public policy debates. *Keith*, 764 F.2d at 1270. As one court observed:

> In cases like this one, where a group of plaintiffs challenge state legislation, the court should evaluate requests to intervene with special care, lest the case be swamped by extraneous parties who would do little more than reprise the political debate that produced the legislation in the first place.

*One Wis. Inst., Inc. v. Nichol*, 310 F.R.D. 394, 397 (W.D. Wis. 2015).

[¶25] We therefore adhere to the authority that advocating for a policy and lobbying for legislation to enact that policy does not give an individual or entity a protectable interest in a legal challenge to the subsequently enacted law. Because RTLW does not have a protectable interest in this litigation, the district court did not err in denying its motion to intervene as of right. *Halliburton*, 2007 WY 151, ¶ 6, 167 P.3d at 648 ("An applicant who fails to meet any of the conditions of W.R.C.P. 24(a)(2) is not permitted to intervene as of right.") (quoting *State Farm*, 871 P.2d at 194).

## B. Representatives Rodriguez-Williams and Neiman do not have a significant protectable interest in the litigation.

[¶26] Representatives Rodriguez-Williams and Neiman claim a significant protectable interest in this litigation because they "were the lead sponsor and the chief legislative shepherd of the statutes, respectively." They further cite their interest in protecting the legislature's authority to enact laws governing abortion and to protect the health and general welfare of the people. They add:

> These particular Legislators have an especially strong interest in defending the statutes, beyond their roles as lead sponsor and floor leader. Both Representatives Neiman and Rodriguez-Williams have decades-long personal histories of public pro-life advocacy in their communities. Both ran on pro-life campaign platforms and committed their legislative effort to this crucial policy achievement. The Legislators should be allowed to preserve these interests by defending the law that they worked so hard to enact.

8

[¶27]  Again, we do not question the dedication of the Representatives to their campaign against abortion and their work on behalf of the challenged laws. However, we also again disagree that their interest, for purposes of Rule 24(a)(2) intervention, is unique from that of the public generally.

[¶28]  First, we reject the argument that this litigation threatens the legislature's authority to regulate abortion or the health and welfare of the public. Regardless of the outcome of this case, the legislature may still legislate in these areas. To the extent it must do so within constitutional parameters established by a court decision in the case, that is not a diminution of its power, but is instead a product of the separation of powers that underpins our government.

> Determining whether a statute violates the constitution has been a matter for judicial consideration since the United States Supreme Court decided *Marbury v. Madison* in 1803. Declaring the validity of statutes in relation to the constitution is a power vested in the courts as one of the checks and balances contemplated by the division of government into three departments, legislative, executive and judicial. It is emphatically the province and duty of the judicial department to say what the law is.

*Conrad v. Uinta Cnty. Republican Party*, 2023 WY 46, ¶ 13, 529 P.3d 482, 489 (Wyo. 2023) (cleaned up).

[¶29]  Interpreting the constitution is exclusively the province of the courts and does not impinge on the legislature's authority to vote on legislation. As the Pennsylvania Supreme Court explained in upholding the denial of intervention to legislators seeking to defend a law their body enacted,

> the legislators' interest implicates neither a defense of the power or authority of their offices nor a defense of the potency of their right to vote. Rather, the legislators simply seek to offer their perspective on the correctness of governmental conduct, *i.e.,* that the General Assembly did not violate the substantive and procedural strictures of the Pennsylvania Constitution in enacting Act 13.

*Robinson Twp. v. Commonwealth*, 84 A.3d 1054, 1055 (Pa. 2014); *see also Newdow v. U.S. Cong.*, 313 F.3d 495, 499 (9th Cir. 2002) (senate's own powers and responsibilities not under attack when constitutionality of law challenged); *Roe v. Casey*, 464 F.Supp. 483, 486 (E.D. Pa. 1978) (legislator who co-sponsored law had no protectable interest in litigation where issue did not concern whether law was duly and lawfully enacted).

[¶30]   The same is true here. The legislature's authority to vote on legislation is not at issue in this case. Consequently, Representatives Rodriguez-Williams and Neiman can claim no protectable interest in this litigation based on their voting authority. Their reliance on *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 142 S.Ct. 2191, 213 L.Ed.2d 517 (2022) to suggest otherwise is misplaced.

[¶31]   *Berger* is the sole case Representatives Rodriguez-Williams and Neiman cite in support of their asserted interest in this litigation. In that case, the United States Supreme Court held that if a state legislature authorizes a legislator to intervene in a case challenging the constitutionality of a state statute, even though the executive branch is already defending the law, the interest and impairment prongs of Rule 24(a)(2) are satisfied. *Berger*, 597 U.S. at 190-94, 142 S.Ct. at 2201-02. The Court reasoned that a state has a protectable interest in defending its laws and the authority to declare who will most effectively represent the state in any challenge to its laws. *Id.*

[¶32]   In this case, the Wyoming Legislature did not authorize Representatives Rodriguez-Willliams and Neiman, or any legislator, to represent the State's interests in defending the two abortion statutes. *Berger* is therefore simply inapplicable.[3]

[¶33]   Finally, we also reject the Representatives' claim of a protectable interest based on their personal histories of advocacy against abortion. This claim fails for the same reason RTLW's claim failed. Because it is an interest shared with the general public, advocating for a policy and working to enact legislation to implement that policy does not create a protectable interest in a legal challenge to the subsequently enacted law. *Tips Up*, 2008 WY 64, ¶ 17, 185 P.3d at 40 (interest must differ from interest of public at large); *see also Daughtrey v. Carter*, 584 F.2d 1050, 1057 (D.C. Cir. 1978) ("Once a bill becomes law, a Congressman's interest in its enforcement is shared by, and indistinguishable from, that of any other member of the public."); *Harrington v. Schlesinger*, 528 F.2d 455, 459 (4th Cir. 1975) ("Once a bill has become law . . . [the Senator's] interest is indistinguishable from that of any other citizen."); *United States v. Arizona*, No. CV 10-1413-PHX-SRB, 2010 WL 11470582, at *3 (D. Ariz. Oct. 28, 2010) ("Senator Pearce's expressed interest is general, shared by many other citizens of the state of Arizona as well as some of his fellow legislators.").

---

[3] Because the Wyoming Legislature did not authorize intervention by a legislator, we need not address whether we would adopt the Supreme Court's holding that such authorization compels a conclusion that the interest and impairment requirements of Rule 24(a)(2) are met. While federal precedent is persuasive in interpreting our own court rules, it is not binding. *Adams v. State*, 2023 WY 85, ¶ 21, 534 P.3d 469, 476 (Wyo. 2023) ("[W]e can look to federal precedent interpreting similar rules as persuasive authority.") (citing *Pena v. State*, 2013 WY 4, ¶ 48, 294 P.3d 13, 22-23 (Wyo. 2013)).

[¶34] As we noted in our discussion of RTLW's interest, our concern with allowing intervention based on a policy interest shared by the general public is the potential for interjection of political debate into a purely legal proceeding. Courts are not forums for such debates. *See One Wis. Inst.*, 310 F.R.D. at 397.

[¶35] For these reasons, Representatives Rodriguez-Williams and Neiman do not have a protectable legal interest in this litigation. The district court therefore did not err in denying their motion to intervene as of right. *Halliburton*, 2007 WY 151, ¶ 6, 167 P.3d at 648 ("An applicant who fails to meet any of the conditions of W.R.C.P. 24(a)(2) is not permitted to intervene as of right.") (quoting *State Farm*, 871 P.2d at 194).

## II. The district court did not abuse its discretion in denying the Proposed Intervenors' motion for permissive intervention.

[¶36] A court may allow permissive intervention "when the intervenor's claim or defense has a question of fact or law in common with the main action and the court in its discretion determines intervention will not unduly delay or prejudice the adjudications of the rights of the original parties." *Masinter*, 2002 WY 64, ¶ 6, 45 P.3d at 240 (citing W.R.C.P. 24(b)(2)).

> A court abuses its discretion when it acts in a manner which exceeds the bounds of reason under the circumstances. The party who is attacking the trial court's ruling has the burden to establish an abuse of discretion, and the ultimate issue is whether the court could reasonably conclude as it did.

*Kerbs v. Kerbs*, 2020 WY 92, ¶ 14, 467 P.3d 1015, 1019 (Wyo. 2020) (quoting *Three Way, Inc. v. Burton Enters., Inc.*, 2008 WY 18, ¶ 16, 177 P.3d 219, 225 (Wyo. 2008)).

[¶37] The district court denied permissive intervention on grounds the State Defendants were adequately representing the Proposed Intervenors' interests and intervention would unduly delay and prejudice the case's adjudication. We find no abuse of discretion in its ruling.

### A. The district court reasonably concluded the State Defendants were adequately representing the interests of the Proposed Intervenors.

[¶38] The Proposed Intervenors contend the district court abused its discretion in weighing the adequacy of the State Defendants' representation against its bid for permissive intervention. They argue the adequacy of the representation is irrelevant to the question of permissive intervention and, even if it were relevant, they showed the representation was not adequate. We disagree on both counts.

11

[¶39] Adequate representation of a proposed intervenor's interests is a proper consideration for permissive intervention. *Tri-State Generation*, 787 F.3d at 1075; *City of Stilwell v. Ozarks Rural Elec. Co-op Corp.*, 79 F.3d 1038, 1043 (10th Cir. 1996). And, "[w]here the intervenor and an existing party have the same objective, a presumption of adequacy of representation arises." *Tips Up*, 2008 WY 64, ¶ 20, 185 P.3d at 41 (quoting *Or. Env't. Council v. Or. Dep't of Env't. Quality*, 775 F.Supp. 353, 359 (D. Or. 1991)). To overcome this presumption, a proposed intervenor "must make 'a concrete showing of circumstances' that the . . . representation is inadequate." *Tri-State Generation*, 787 F.3d at 1073 (quoting *Bottoms v. Dresser Indus., Inc.*, 797 F.2d 869, 872 (10th Cir. 1986)).

[¶40] The State Defendants filed a nearly 100-page opposition to Plaintiffs' motion for a temporary restraining order so their interest in enforcing the challenged laws and having their constitutionality upheld is apparent. Given that the State Defendants and the Proposed Intervenors share this same goal, we presume the State Defendants' representation is adequate. Moreover, the legislature created the Office of the Attorney General to represent the State's interests and has specifically recognized the Attorney General's role in defending the constitutionality of state statutes. Wyo. Stat. Ann. § 9-1-603(a)(i)-(v) (2023); Wyo. Stat. Ann. § 1-37-113 (2023) (requiring Attorney General to be copied and heard in any declaratory judgment action alleging a statute to be unconstitutional); *see also Tri-State Generation*, 787 F.3d at 1074 (finding adequacy of representation based in part on fact that defendant was represented by state attorney general "who is obligated by law to defend the constitutionality of the statute"); *Stuart v. Huff*, 706 F.3d 345, 351 (4th Cir. 2013) ("[W]hen a statute comes under attack, it is difficult to conceive of an entity better situated to defend it than the government.").

[¶41] The Proposed Intervenors do not challenge the district court's finding that "the Wyoming Attorney General is currently asserting a vigorous defense[.]" They instead point to the State Defendants' position that the issues in the case are questions of law that do not require the court to take evidence. Because Plaintiffs have offered evidence to support their challenge, the Proposed Intervenors contend they should be permitted to intervene to present opposing evidence they claim supports the challenged laws. Notably, however, the Proposed Intervenors conceded during oral argument that the State Defendants have made a colorable argument that they do not necessarily disagree with, and in their briefing, they refer to it as "principled."[4]

---

[4] In support of their desire to intervene with evidence, the Proposed Intervenors point to our order declining to answer the constitutional questions the district court certified to the Court. In that order we stated, "This Court does not believe it can answer all twelve certified questions on the limited factual record provided." The Proposed Intervenors read too much into that statement. We did not specify that an evidentiary hearing was required. Our concern was with ruling on the questions in a vacuum without a fully developed record, whatever that record may ultimately look like.

[¶42] The Proposed Intervenors have not made a concrete showing that the State Defendants' representation of their interests was inadequate. What they have shown is a difference in litigation strategy, which is insufficient to establish inadequacy of representation. *Kane Cnty., Utah v. United States*, 928 F.3d 877, 892 (10th Cir. 2019) ("Of course, representation is not inadequate simply because the applicant and the representative disagree regarding the facts or law of the case.") (quoting *Sanguine, Ltd. v. U.S. Dep't of Interior*, 736 F.2d 1416, 1419 (10th Cir. 1984) (burden of showing inadequate representation, while minimal, is on the applicant for intervention)); *Stuart*, 706 F.3d at 353 ("[T]he relevant and settled rule is that disagreement over how to approach the conduct of the litigation is not enough to rebut the presumption of adequacy.") (citing circuit cases); *Saldano v. Roach*, 363 F.3d 545, 553-54 (5th Cir. 2004) (denying district attorney's motion to intervene in post-conviction proceedings where attorney general confessed error and waived a procedural default and noting that "[t]he Attorney General is not an inadequate representative simply because he has taken these actions, especially when state law gives him the authority to do so."); *Bumgarner v. Ute Indian Tribe of Uintah & Ouray Rsvr.*, 417 F.2d 1305, 1308 (10th Cir. 1969) ("Appellants apparently would have handled the defense of the case differently than did the Administratrix. This however is not sufficient to challenge the adequacy of representation."); 7C Charles A. Wright et al., *Federal Practice & Procedure: Civil* § 1909, at 431-35 (3d ed. Apr. 2023 update) ("A mere difference of opinion concerning the tactics with which the litigation should be handled does not make inadequate the representation of those whose interests are identical with that of an existing party[.]").

[¶43] The Fourth Circuit explained the importance of this limitation on intervention, particularly in cases where the government is defending the constitutionality of a statute.

> Finally, to permit private persons and entities to intervene in the government's defense of a statute upon only a nominal showing would greatly complicate the government's job. Faced with the prospect of a deluge of potential intervenors, the government could be compelled to modify its litigation strategy to suit the self-interested motivations of those who seek party status, or else suffer the consequences of a geometrically protracted, costly, and complicated litigation. In short, "the business of [the] government could hardly be conducted if, in matters of litigation, individual citizens could usually or always intervene and assert individual points of view."

*Stuart*, 706 F.3d at 351 (quoting 6 *Moore's Federal Practice* § 24.03[4][a][v][A] (3d ed. 2011)).

13

[¶44] Adequacy of representation is a relevant consideration in ruling on permissive intervention, and the district court reasonably concluded that the State Defendants adequately represented the Proposed Intervenors' interests. It therefore did not abuse its discretion in weighing this consideration against permissive intervention.

**B.      The district court reasonably concluded the Proposed Intervenors' intervention would unduly delay the case and prejudice its adjudication.**

[¶45] The district court found that because the Proposed Intervenors and the State Defendants seek the same objective in the litigation, intervention would risk duplicative and cumulative argument, which would delay the matter to the detriment of the parties. The Proposed Intervenors contend that because their sole wish is to present evidence the State Defendants are not presenting, the district court's concern was not valid. We disagree.

[¶46] Despite the differences in strategy between the State Defendants and the Proposed Intervenors, it was not beyond the bounds of reason for the district court to conclude that their shared objective would result in a duplication of arguments and delay.

> Where the interests of the applicant in every manner match those of an existing party and the party's representation is deemed adequate, the district court is well within its discretion in deciding that the applicant's contributions to the proceedings would be superfluous and that any resulting delay would be undue.

*Nat'l Collegiate Athletic Ass'n v. Corbett*, 296 F.R.D. 342, 350 (M.D. Pa. 2013) (cleaned up) (quoting *Hoots v. Pennsylvania*, 672 F.2d 1133, 1136 (3d Cir. 1982)); *see also Barnes v. Sec. Life of Denver Ins. Co.*, 945 F.3d 1112, 1126-27 (10th Cir. 2019) (Hartz, J., dissenting) ("Adding a party necessarily imposes additional burdens on the court and other parties. To do so when there is every reason to expect (and no reason not to expect) that the interests of the party will be well represented in its absence hardly increases the efficiency of the judicial process."); *Stuart*, 706 F.3d at 355 (upholding denial of permissive intervention where district court found intervention would cause delay without a corresponding benefit as existing defendants adequately represented interests).

[¶47] The district court reasonably found intervention would cause delay and prejudice, and it did not abuse its discretion in weighing this consideration against permissive intervention.

## *CONCLUSION*

[¶48] The Proposed Intervenors do not have a protectable interest in this litigation, and thus the district court did not err in denying them intervention as of right. The district court reasonably concluded the State Defendants adequately represented the Proposed Intervenors' interest and permissive intervention would cause undue delay and prejudice. It therefore did not abuse its discretion in denying permissive intervention.