PUBLISH

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

**June 1, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

TRI-STATE GENERATION AND
TRANSMISSION ASSOCIATION,
INC., a Colorado nonprofit
cooperative corporation,

     Plaintiff - Appellee,

v.

NEW MEXICO PUBLIC
REGULATION COMMISSION, a
New Mexico Agency, and its
members; COMMISSIONER
PATRICK H. LYONS;
COMMISSIONER THERESA
BECENTI-AGUILAR;
COMMISSIONER BEN L. HALL;
COMMISSIONER VALERIE
ESPINOZA; COMMISSIONER
KAREN L. MONTOYA, acting in
their official capacities,

     Defendants.

----------------------

KIT CARSON ELECTRIC
COOPERATIVE, INC.,

     Movant - Appellant.

No. 14-2164

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. 1:13-CV-00085-KG-LAM)**

Charles V. Garcia of Cuddy & McCarthy, L.L.P., Albuquerque, New Mexico, (Arturo L. Jaramillo, and Young-Jun Roh of Cuddy & McCarthy, L.L.P., Santa Fe, New Mexico, on the briefs), for Movant - Appellant.

John R. Cooney, (Earl E. DeBrine, Jr., and Joan E. Drake of Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, New Mexico; Robert E. Youle and Brian G. Eberle of Sherman & Howard, L.L.C., Denver, Colorado, on the brief), for Plaintiff - Appellee.

Before **KELLY**, **PHILLIPS**, and **MORITZ**, Circuit Judges.

**KELLY**, Circuit Judge.

Movant-Appellant Kit Carson Electric Cooperative, Inc. (KCEC) appeals from the district court's denial of its motion seeking intervention as of right or permissive intervention in a pending case. Tri-State Generation & Transmission Ass'n v. N.M. Pub. Regulation Comm'n, Civ. No. 13-00085 KG/LAM (D.N.M. Aug. 18, 2014). Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

Background

Tri-State Generation and Transmission Association, Inc. (Tri-State), a Colorado non-profit regional cooperative that provides wholesale electric power, filed suit against the New Mexico Public Regulation Commission (NMPRC) seeking declaratory and injunctive relief under 42 U.S.C. § 1983. Tri-State argued that the NMPRC's exercise of jurisdiction and suspension of Tri-State's

wholesale electric rates in New Mexico violated the Commerce Clause of the United States Constitution.

Briefly, Tri-State is a regional generation and transmission (G&T) cooperative that provides wholesale electric power to its forty-four member systems in four states—Colorado, Nebraska, New Mexico, and Wyoming. Each of the member systems has a representative that sits on Tri-State's Board of Directors and has an equal vote as to Tri-State's annual rates. Tri-State charges a "postage-stamp rate" for electricity to its members—i.e., the members systems are all charged the same amount. Aplt. App. 649 & n.3. Each member system has entered into a requirements contract with Tri-State, pursuant to which each member agrees to purchase and receive from Tri-State all the electric power and energy the member requires. These member systems then sell the electricity provided by Tri-State to their members at retail. One of Tri-State's member systems is KCEC, a New Mexico rural electric cooperative that provides services to roughly 28,500 commercial, governmental, and residential member-customers in Northern New Mexico.

Public utilities in New Mexico are regulated by the NMPRC. See N.M. Stat. Ann. § 62-6-4(A) (granting the NMPRC the "general and exclusive power and jurisdiction to regulate and supervise every public utility in respect to its rates and service regulations"). In 1999, Tri-State and Plains Electric Generation and Transmission Cooperative, Inc. (Plains) applied to the NMPRC to allow the

two to merge. Tri-State, Plains, and others entered into a Stipulation which, among other things: (1) required Tri-State to file an "Advice Notice" with the NMPRC prior to setting rates for New Mexico members; (2) provided member cooperatives with the opportunity to file protests to Tri-State's rates with the NMPRC; and (3) provided procedures for the NMPRC to suspend the rates, conduct a hearing, and "establish reasonable rates." Aplt. App. 541. In 2000, the NMPRC approved the Stipulation and merger on condition that Tri-State would be subject to its jurisdiction "to the extent provided by law." Id. at 407. The New Mexico legislature subsequently codified the Stipulation's protest procedures, which provide in relevant part:

> New Mexico rates proposed by a generation and transmission cooperative shall be filed with the commission in the form of an advice notice, a copy of which shall be simultaneously served on all member utilities. Any member utility may file a protest of the proposed rates no later than twenty days after the generation and transmission cooperative files the advice notice. If three or more New Mexico member utilities file protests and the commission determines there is just cause in at least three of the protests for reviewing the proposed rates, the commission shall suspend the rates, conduct a hearing concerning reasonableness of the proposed rates and establish reasonable rates.

N.M. Stat. Ann. § 62-6-4(D). In 2012, Tri-State's Board of Directors voted to approve a 4.9% rate increase for the calendar year 2013. Tri-State appropriately filed Advice Notice No. 15 with the NMPRC to inform it of the increase. KCEC, along with two other New Mexico member systems, filed protests objecting to the rate increase. Over Tri-State's objections, the NMPRC suspended Tri-State's rate

increase for 2013.

On January 25, 2013, Tri-State filed the present action against the NMPRC. Later, in September 2013, Tri-State approved a wholesale rate increase for 2014 and filed an Advice Notice with the NMPRC. After rate protests by KCEC and three others, the NMPRC proceeded to suspend Tri-State's 2014 rate increases as well. The NMPRC consolidated the proceedings on both the 2013 and 2014 wholesale rates. These proceedings remain pending before the NMPRC.

In February 2014, Tri-State filed an amended complaint adding factual allegations regarding the NMPRC's suspension of its 2014 wholesale rate. Tri-State's amended complaint asserts Tri-State is entitled to declaratory and injunctive relief because "[t]he Commission's exertion of jurisdiction to suspend and subsequently review and establish Tri-State's rates in New Mexico constitutes economic protectionism and imposes a burden on interstate commerce in violation of the Commerce Clause." Aplt. App. 658–60. Tri-State requested an order declaring that:

> (a) the Commission lacks jurisdiction over Tri-State's rates and interstate wholesale contracts in New Mexico and any attempt by the Commission to exercise jurisdiction over, suspend and/or determine Tri-State's rates is unconstitutional under the United States Constitution; (b) the Commission's order suspending Tri-State's 2013 and 2014 wholesale rates and setting a rate hearing is unconstitutional under the United States Constitution; (c) the Commission may not take any action with respect to Tri-State's rates or contracts.

Id. at 661; see also id. at 662 (requesting injunctive relief under 42 U.S.C. §

- 5 -

1983).  In its answer, the NMPRC raised eight affirmative defenses, including the doctrines of waiver and estoppel.  It also reserved the right to raise further affirmative defenses that later might become available.

On May 28, 2013, KCEC sought to intervene as of right pursuant to Federal Rule of Civil Procedure 24(a)(2) and permissively pursuant to Rule 24(b).  Tri-State opposed intervention, but the NMPRC did not.

Though not a party to the litigation, KCEC filed an answer to Tri-State's complaint in which it asserted essentially the same affirmative defenses to Tri-State's claims as had the NMPRC.  Aplt. App. 382.  The only unique defense KCEC presented was that Tri-State's complaint failed to state a claim upon which relief could be granted.  Prior to the district court's ruling on KCEC's motion, the NMPRC moved for summary judgment, arguing both that: (1) Tri-State was estopped from challenging the NMPRC's rate-making jurisdiction given its agreement to the earlier Stipulation; and (2) the NMPRC's order did not violate either New Mexico law or the Commerce Clause of the United States Constitution.  Id. at 931–47.  Though still not a party to the litigation, KCEC filed a proposed response to the NMPRC's motion for summary judgment, presenting essentially the same arguments as the NMPRC and providing no additional evidence.  Aplee. Supp. App. 52–58.

The district court then denied KCEC's motion to intervene, finding that neither intervention as of right nor permissive intervention was appropriate.

KCEC timely appealed.

Discussion

KCEC argues that the district court erred in denying intervention as of right under Rule 24(a)(2) and in denying permissive intervention under Rule 24(b).

A.     Intervention as of Right

We review de novo the denial of a motion to intervene as of right.  Kane Cnty., Utah v. United States, 597 F.3d 1129, 1133 (10th Cir. 2010).  Rule 24(a) of the Federal Rules of Civil Procedure provides that, upon timely motion, the court must allow a party to intervene who: "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

Tri-State does not dispute that KCEC's motion for intervention was timely. Thus, we address whether KCEC can satisfy the remaining two requirements of intervention as of right.  First, KCEC must establish an interest in the property or transaction underlying the action that might be impaired by the action's disposition.  See Natural Res. Def. Council, Inc. v. U.S. Nuclear Regulatory Comm'n, 578 F.2d 1341, 1345 (10th Cir. 1978) ("the question of impairment is not separate from the question of existence of an interest").  KCEC identifies several interests that could be impaired by the case at hand that it contends are

sufficient to satisfy Rule 24(a)(2): (1) its "persistent record of advocacy to obtain reasonable rates from Tri-State"; (2) its "direct economic interest in the determination of whether the NMPRC's exercise of its rate jurisdiction pursuant to Section 62-6-4(D) violates the Commerce Clause"; (3) its interest in upholding its membership agreement and power supply contract with Tri-State; (4) its statutory right to regulatory review of Tri-State's rates; and (5) its interest in upholding the Tri-State/Plains merger and the Stipulation. Aplt. Br. 23–26. We assume, as did the district court, that KCEC has sufficiently shown an interest in the lawsuit that may be impaired by its disposition. Cf. Kane Cnty., 597 F.3d at 1133. Thus, we proceed directly to the inquiry whether KCEC's interest is adequately represented by the NMPRC.

"Even if an applicant satisfies the other requirements of Rule 24(a)(2), it is not entitled to intervene if its 'interest is adequately represented by existing parties.'" San Juan Cnty., Utah v. United States, 503 F.3d 1163, 1203 (10th Cir. 2007) (en banc) (quoting Fed. R. Civ. P. 24(a)(2)). This requirement is satisfied where the applicant "shows that representation of his interest *may be* inadequate"—a "minimal" showing. Trbovich v. United Mine Workers of Am., 404 U.S. 528, 538 n.10 (1972) (emphasis added) (internal quotation marks omitted); see also Utah Ass'n of Counties v. Clinton, 255 F.3d 1246, 1254 (10th Cir. 2001). Thus, the likelihood of a divergence of interest "need not be great" to satisfy the requirement. Natural Res. Def. Council, 578 F.2d at 1346.

For instance, where a governmental agency is seeking to represent both the interests of the general public and the interests of a private party seeking intervention, we have repeatedly found representation inadequate for purposes of Rule 24(a)(2). See, e.g., Utahns for Better Transp. v. U.S. Dep't of Transp., 295 F.3d 1111, 1117 (10th Cir. 2002) ("[I]n such a situation the government's prospective task of protecting 'not only the interest of the public but also the private interest of the petitioners in intervention' is 'on its face impossible' and creates the kind of conflict that 'satisfies the minimal burden of showing inadequacy of representation.'" (citation omitted)); Clinton, 255 F.3d at 1256 (inadequate representation prong satisfied where government was "obligated to consider a broad spectrum of views, many of which may conflict with the particular interest of the would-be intervenor"); Nat'l Farm Lines v. Interstate Commerce Comm'n, 564 F.2d 381, 384 (10th Cir. 1977) (inadequate representation prong satisfied where Interstate Commerce Commission sought to protect "not only the interest of the public but also the private interest of the petitioners in intervention").

These cases, however, are inapplicable where "'the objective of the applicant for intervention is identical to that of one of the parties.'" City of Stilwell, Okla. v. Ozarks Rural Elec. Coop. Corp., 79 F.3d 1038, 1042 (10th Cir. 1996) (quoting Bottoms v. Dresser Indus., Inc., 797 F.2d 869, 872 (10th Cir. 1986)); see also Coal. of Ariz./N.M. Counties for Stable Econ. Growth v. Dep't of

Interior, 100 F.3d 837, 845 (10th Cir. 1996).  Under such circumstances, we presume representation is adequate.  See Bottoms, 797 F.2d at 872–73; San Juan Cnty., 503 F.3d at 1204 (opinion of Hartz, J.); id. at 1227 & n.1 (Ebel, J., dissenting).[1]  Thus, even though a party seeking intervention may have different "ultimate motivation[s]" from the governmental agency, where its objectives are the same, we presume representation is adequate.  Ozarks, 79 F.3d at 1042.

We are presented with precisely such a situation here, where the NMPRC and KCEC have identical litigation objectives: preserving the NMPRC's rate jurisdiction over Tri-State.  All of KCEC's claimed interests—its track record of rate advocacy, its direct economic interest in the result of the litigation, its interest in upholding its contracts with Tri-State, its interest in preserving its right to regulatory review of rates, and its interest in upholding the Tri-State/Plains merger and Stipulation—ineluctably flow from its objective of preserving the NMPRC's jurisdiction over Tri-State's wholesale electricity rates.  Each of

---

[1] In San Juan County, this court addressed en banc whether several conservation groups were entitled to intervene in a federal quiet-title action brought by San Juan County against the United States.  503 F.3d at 1167.  Six judges concluded that the conservation groups did not have a sufficient "interest" under Rule 24(a), id. at 1207 (Kelly, J., concurring), and thus had no occasion to address whether the conservation groups' interests would be adequately represented by the United States.  Of the judges to address the adequate representation prong, all seven—Judge Hartz writing for three judges and Judge Ebel writing for four—agreed that a presumption of adequate representation applied where an applicant for intervention had objectives "identical" to a party to the suit.  Id. at 1204 (opinion of Hartz, J.); id. at 1227 & n.1 (Ebel, J., dissenting).

- 10 -

KCEC's claimed interests are part and parcel of its broader interest in maintaining the NMPRC's jurisdiction over these rates.

And of course, the NMPRC's objective in the proceeding is identical—preserving its own jurisdiction over Tri-State's wholesale electric rates. This simply is not a case where the governmental agency must account for a "broad spectrum" of interests that may or may not be coextensive with the intervenor's particular interest. Clinton, 255 F.3d at 1256. Tri-State's suit challenges the constitutionality of a New Mexico statute granting the NMPRC power to, under certain circumstances, "suspend" a G&T cooperative's rates, "conduct a hearing" on the reasonableness of the rates, and "establish reasonable rates." N.M. Stat. Ann. § 62-6-4(D). Thus, the suit presents a "binary" issue—whether the New Mexico statute granting the NMPRC this authority accords with the Commerce Clause of the United States Constitution. San Juan Cnty., 503 F.3d at 1228 (Ebel, J., dissenting). The challenge does not require the NMPRC to strike some balance between the interest of electricity wholesalers, retailers, and the general public. Nor does it require the NMPRC to determine the reasonableness of Tri-State's current rates or establish reasonable rates. It simply requires the NMPRC to argue its authority under § 62-6-4(D) does not violate the Commerce Clause.

Given that the NMPRC and KCEC have identical objectives in the dispute, we presume that the NMPRC's representation is adequate. To overcome this

presumption, KCEC must make "a concrete showing of circumstances" that the NMPRC's representation is inadequate. Bottoms, 797 F.2d at 872 (quoting 7A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1909, at 529 (1972)). These circumstances include a "showing that there is collusion between the representative and an opposing party, that the representative has an interest adverse to the applicant, or that the representative failed to represent the applicant's interest." Id. at 872–73 (citing Sanguine, Ltd. v. U.S. Dep't of Interior, 736 F.2d 1416, 1419 (10th Cir. 1984)).

KCEC argues that "the NMPRC, as an adjudicatory body in a pending rate case, is limited in its ability to present evidence or advance arguments" regarding how its rate-making authority satisfies the Commerce Clause. Aplt. Br. 31. It argues that, under existing Commerce Clause standards, the NMPRC will have to establish that the law's burden on interstate commerce was not "clearly excessive in relation to the putative local benefits." Id. at 30 (quoting Ark. Elec. Coop. Corp. v. Ark. Pub. Serv. Comm'n, 461 U.S. 375, 395 (1983)). KCEC contends that the NMPRC will be inhibited from effectively making this argument, given its "impartial adjudicatory role" in the pending rate proceedings. Id. at 31. But contrary to KCEC's assertion, the pendency of rate proceedings will not prevent the NMPRC from arguing the local benefits furthered by § 62-6-4(D). The NMPRC need not argue for a particular rate or rate structure in order to set forth the intrastate benefits of its jurisdiction over Tri-State's rates.

In addition, there is no reason to think that the NMPRC will not vigorously argue in favor of its statutory authority. The NMPRC is represented by the New Mexico Attorney General, who is obligated by law to defend the constitutionality of the statute. See N.M. Stat. Ann. § 8-5-2. Further, through this point in litigation, the NMPRC has "displayed no reluctance" to defend the statute. San Juan Cnty., 503 F.3d at 1206 (opinion of Hartz, J.); see also Coal. of Ariz./N.M. Counties, 100 F.3d at 845 (considering DOI's "reluctance in protecting the Owl" in finding that DOI may not adequately represent photographer/biologist's interests). As noted, the NMPRC has raised a number of affirmative defenses to Tri-State's claims and reserved the right to raise additional defenses. KCEC's proposed response to Tri-State's complaint raised nearly identical defenses. The NMPRC raised additional arguments in its motion for summary judgment, including that Tri-State was estopped from challenging the NMPRC's rate-making jurisdiction given its agreement to the earlier Stipulation. The NMPRC's arguments were once again parroted by KCEC in its proposed motion for summary judgment. In short, the NMPRC appears to be representing KCEC's interests precisely as KCEC would.

Finally, we note that, unlike cases where intervention applicants possessed unique knowledge or expertise beyond that of the governmental agency, see, e.g., Nat'l Farm Lines, 564 F.2d at 383, KCEC does not argue it possesses particular expertise beyond that of the NMPRC, cf. Kane Cnty., 597 F.3d at 1135.

- 13 -

For the foregoing reasons, we affirm the district court's denial of intervention as of right under Rule 24(a)(2).

B.      Permissive Intervention

Rule 24(b)(1)(B) governing permissive intervention provides that, on timely motion, the court may permit anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact." In exercising its discretion to permit a party to intervene, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). The district court observed that it was clear that KCEC's affirmative defenses had questions of law and fact in common with the NMPRC's defenses. It further rejected Tri-State's argument that allowing intervention would yield a deluge of other intervention applications from similarly situated electricity retailers. Nevertheless, the court found that, on balance, permissive intervention was inappropriate, because: (1) allowing intervention would burden the parties with additional discovery; and (2) the NMPRC would adequately represent KCEC's interests.

We review the district court's denial of permissive intervention for an abuse of discretion. Kane Cnty, 597 F.3d at 1135; Alameda Water & Sanitation Dist. v. Browner, 9 F.3d 88, 89–90 (10th Cir. 1993). In reviewing for abuse of discretion, "we may not . . . substitute our own judgment for that of the trial court." Nalder v. West Park Hosp., 254 F.3d 1168, 1174 (10th Cir. 2001)

(internal quotation marks omitted). "An abuse of discretion will be found only where the trial court makes 'an arbitrary, capricious, whimsical, or manifestly unreasonable judgement.'" Fed. Deposit Ins. Corp. v. Oldenburg, 34 F.3d 1529, 1555 (10th Cir. 1994) (quoting United States v. Hernandez-Herrera, 952 F.2d 342, 343 (10th Cir. 1991)). As KCEC notes, "decisions holding that the district court abused its discretion in denying permissive intervention are predictably rare." Aplt. Br. 35–36. This concession is in fact an understatement—KCEC cites no Tenth Circuit decisions reversing a district court's denial of permissive intervention.

KCEC contends that the district court abused its discretion by relying on the NMPRC's adequate representation of KCEC's interests, both because the NMPRC could not adequately represent KCEC's interests and because Rule 24(b) does not speak to adequate representation as a consideration. Aplt. Br. 40–41. As to the contention that NMPRC may not adequately represent KCEC's rights, we reject this argument for reasons specified above in our Rule 24(a) analysis. As to KCEC's suggestion that Rule 24(b) does not provide for consideration of adequate representation, we have elsewhere affirmed denial of permissive intervention on such grounds. Ozarks, 79 F.3d at 1043; see also Perry v. Proposition 8 Official Proponents, 587 F.3d 947, 955 (9th Cir. 2009) (in exercising discretion under Rule 24(b), district court may consider "whether the intervenors' interests are adequately represented by other parties" (citation

omitted)); Am. Ass'n of People with Disabilities v. Herrera, 257 F.R.D. 236, 249 (D.N.M. 2008) ("While not a required part of the test for permissive intervention, a court's finding that existing parties adequately protect prospective intervenors' interests will support a denial of permissive intervention.").

KCEC also argues that the district court abused its discretion by finding that the parties would be burdened by discovery propounded by KCEC virtually identical to that sought by the NMPRC. KCEC argues that there was no evidence to support this finding, and that even if there was, the district court always retains the ability to limit and manage discovery pursuant to its authority under Rule 26 of the Federal Rules of Civil Procedure. Aplt. Br. 38 (citing United States v. Albert Inv. Co., 585 F.3d 1386, 1396 (10th Cir. 2009)). Given Rule 24(b)(3)'s mandate to the district court to consider whether intervention might unduly delay or prejudice adjudication of the original parties' rights, we think the district court was entitled to consider the potential for burdensome or duplicative discovery in its analysis—even given its ability to manage discovery. In short, KCEC has not shown that the district court's denial of permissive intervention was "arbitrary, capricious, whimsical, or manifestly unreasonable." Oldenburg, 34 F.3d at 1555.

AFFIRMED.