# THE SUPREME COURT, STATE OF WYOMING

# 2024 WY 129

OCTOBER TERM, A.D. 2024

December 6, 2024

| | |
|---|---|
| CITIZENS FOR RESPONSIBLE USE OF STATE LANDS, a Wyoming unincorporated nonprofit association, **Appellant** (Proposed Intervenor), v. STATE OF WYOMING, BOARD OF LAND COMMISSIONERS, **Appellee** (Plaintiff), and TETON COUNTY BOARD OF COUNTY COMMISSIONERS, **Appellee** (Defendant). | S-24-0017 |

*Appeal from the District Court of Laramie County*
*The Honorable Steven K. Sharpe, Judge*

*Representing Appellant:*

   William P. Schwartz and Leah C. Schwartz of Parsons Behle & Latimer, Jackson, Wyoming.  Argument by Mr. Schwartz

*Representing Appellee:*

   Bridget Hill, Attorney General; Brandi Monger, Deputy Attorney General; James Peters, Senior Assistant Attorney General.  Argument by Mr. Peters.



*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FENN, Justice.**

[¶1]    Citizens for Responsible Use of State Lands (CRUSL) appeals the district court's denial of its motion to intervene as a matter of right in an action filed by the Wyoming Board of Land Commissioners against the Teton County Board of County Commissioners. In the underlying action, the Wyoming Board of Land Commissioners seeks declaratory and injunctive relief regarding whether counties have authority to enforce their land use/development regulations on state trust lands.  We affirm.

## ISSUE

[¶2]    CRUSL raises one issue on appeal, which we rephrase as: Did the district court err in denying CRUSL's motion to intervene as a matter of right under Wyoming Rule of Civil Procedure (W.R.C.P.) 24(a)(2) (LexisNexis 2023)?

## FACTS

[¶3]    The Wyoming Board of Land Commissioners (Board) is the constitutionally-created entity tasked with the "direction, control, leasing and disposal of lands of the state granted, or which may be hereafter granted for the support and benefit of public schools. . . ." Wyo. Const. art. XVIII, § 3; Wyo. Stat. Ann. § 36-2-101 (LexisNexis 2021). The Board manages state trust land for the benefit of all the State's public schools in all 23 counties.  To generate revenue for the benefit of the public schools, the Board authorizes various activities on state trust land in exchange for monetary compensation.

[¶4]    On behalf of the State of Wyoming, the Board manages approximately 3.5 million surface acres and 3.9 million mineral acres of land in the State.  In Teton County, the Board manages Section 36 in Township 42 North, Range 117 West, 6th P.M. (Parcel).  For management purposes, the Board divided a portion of this Parcel into nine separate tracts of land, and under its rules and regulations it issues temporary use permits to various entities for short-term commercial use of those tracts.  Each temporary use permit the Board approves allows the permittee to use the tract of state trust land for a specific purpose and period of time, up to a maximum of five years.

[¶5]    In June 2022, the Office of State Lands and Investments, the administrative arm for the Board, issued two temporary use permits.  The first temporary use permit was issued to Basecamp Hospitality, LLC (Basecamp) to utilize Tract 9 of the Parcel, which consisted of approximately 4.76 acres of land.  The temporary use permit authorized Basecamp to construct 11 low-impact glamping accommodations for single and multi-night vacation rentals including space for "shower house trailers, a welcome center, retail/rental space, food offering, sauna, storage and maintenance shed, and small staff living quarters."  The temporary use permit also authorized Basecamp to make the following improvements on Tract 9: "[r]oadway, parking lot, signage, berms, trees, visual coverings, septic system,

1

community gathering area, leach field, landscaping, water well, holding tanks, 11 units on decks, fencing, cattle guards, walking paths, electrical power, generators, solar power generators, and solar panels." The second temporary use permit the Office of State Lands and Investments issued was to Wilson Investments, LLC to utilize Tracts 2, 3 and 5 of the Parcel, which consisted of approximately 9.7 acres. The temporary use permit authorized Wilson Investments to utilize Tracts 2 and 3 for a storage unit facility and Tract 5 for a landscape yard. Wilson Investments was authorized to make the following improvements on the tracts of land: "[w]ater well, fencing, trees, internet connection, power line, and roadway."

[¶6] Basecamp's and Wilson Investments' temporary use permits were to commence on August 1, 2022, and expire on August 1, 2027. Both temporary use permits are non-transferable and have numerous terms and conditions. One relevant term of both permits requires Basecamp and Wilson Investments to "observe all state, federal and local laws and regulations."

[¶7] On June 21, 2022, the Teton County Board of County Commissioners (Teton County) filed a petition for review in the Ninth Judicial District Court, Teton County, Wyoming, challenging the issuance of the temporary use permits to Basecamp and Wilson Investments. Teton County contended the decision to issue the temporary use permits was improper, and instead, the Board should have issued special use permits. Teton County argued special use permits subject the permittees to all of Teton County's applicable land use and planning and zoning laws. The Board filed a motion to dismiss, arguing Teton County is not entitled to judicial review of decisions made by the Board. The district court granted the motion to dismiss in October 2022 and found the Wyoming Administrative Procedure Act, Wyoming Statute § 16-3-114(a) (LexisNexis 2021), limits review of a final agency decision to "any person aggrieved or adversely affected. . . ." The district court found the definition of "person" specifically excludes an agency, and because Teton County meets the definition of an agency, Teton County was not entitled to judicial review of the issuance of the two temporary use permits.

[¶8] Following dismissal of the appeal, on November 28, 2022, the Teton County Planning and Building Services Department Director (Teton County Director), on behalf of Teton County, sent Basecamp and the Office of State Lands and Investments a notice to abate, asserting the development of the Parcel violated seven of Teton County's land development regulations. The Teton County Director sent a substantially similar notice to abate to Wilson Investments. On December 20, 2022, the Board responded by objecting to both notices, claiming the State retained its sovereign immunity.

[¶9] Two days after objecting to the notices, the Board filed a complaint for declaratory judgment and injunctive relief against Teton County in the First Judicial District, Laramie County, Wyoming. The State sought "a declaration that sovereign immunity bars a county from [enforcing] its land use/development regulations against the Board or its permittees

on state trust land." The State also sought preliminary and permanent injunctive relief prohibiting Teton County from enforcing its land development regulations against the State or its permittees on the Parcel.

[¶10] While the current action was pending, the Teton County Director sent a second notice to abate to Basecamp and the Office of State Lands and Investments, alleging continued violations of Teton County's land development regulations. Teton County set the notice to abate for a hearing on July 5, 2023. In response, the Board filed a motion for a temporary restraining order and preliminary injunction requesting the district court issue an emergency injunction. The district court held an emergency hearing on June 15, 2023. Shortly thereafter, the district court issued a temporary restraining order and preliminary injunction, enjoining Teton County from enforcing its land development regulations against the Board or its permittees through abatement proceedings pending resolution of the underlying matter.

[¶11] The following month, on July 15, 2023, four individuals owning property and personal residences in proximity to the Parcel formed Citizens for Responsible Use of State Lands (CRUSL). The purpose of CRUSL is:

> To take such lawful and appropriate actions that are reasonable and necessary to insure that the use of Wyoming state school trust lands occurs in a reasonable manner that (i) does not endanger or threaten the health, safety, property values, and general welfare of Wyoming citizens and landowners located adjacent to or near such lands; (ii) is materially consistent with local duly-enacted land use regulations, rules, and resolutions of general application; (iii) supports school funding while preserving Wyoming's agricultural and outdoor recreational heritage; and (iv) preserves the value of state school trust lands for current and future generations of Wyoming citizens.

Upon learning of the issuance of the preliminary injunction, CRUSL sought to intervene because of the concern that Teton County's local regulations are potentially unenforceable on the Parcel. CRUSL filed its motion to intervene on August 11, 2023, claiming it was entitled to intervene as a matter of right under W.R.C.P. 24(a)(2), or in the alternative, requesting the district court allow it to permissively intervene under W.R.C.P. 24(b).

[¶12] The Board objected to CRUSL's request to intervene. It argued: 1) CRUSL failed to meet the requirements for intervention of right under W.R.C.P. 24(a)(2); and 2) the district court should deny permissive intervention under W.R.C.P. 24(b) because Teton County adequately represents CRUSL's interest and allowing the intervention would further delay the proceedings, which had been pending for almost a year. Teton County argued that CRUSL should be allowed to intervene. After a hearing, the district court

denied CRUSL's request to intervene both as a matter of right and permissively. The district court found CRUSL's argument stems from the proximity between the founding members' properties and the Parcel in Teton County. However, because the issue involves all state trust lands, the district court held CRUSL does not have a significant protectable interest that permits intervention as a matter of right. Similarly, the district court denied CRUSL's request for permissive intervention because CRUSL's interest is related to the Parcel in Teton County, and the underlying action involves all state trust lands, which differentiates CRUSL's claims or defenses from the question pending before the district court. The district court further found allowing CRUSL to permissively intervene at this stage would unduly delay the progress of the matter.

[¶13] CRUSL timely appealed the district court's decision. CRUSL limited its appeal to the district court's denial of its intervention as a matter of right and did not appeal the denial of its request for permissive intervention.

## STANDARD OF REVIEW

[¶14] "In reviewing a denial of intervention of right, both questions of law and judicial discretion exist." *Hirshberg v. Coon*, 2012 WY 5, ¶ 9, 268 P.3d 258, 260 (Wyo. 2012) (quoting *Concerned Citizens of Spring Creek Ranch v. Tips Up, L.L.C.*, 2008 WY 64, ¶ 11, 185 P.3d 34, 38 (Wyo. 2008)). "This Court reviews a ruling on the timeliness of a motion to intervene for an abuse of discretion." *Rodriguez-Williams v. Johnson*, 2024 WY 16, ¶ 7, 542 P.3d 632, 635–36 (Wyo. 2024) (citing *In re EHD*, 2017 WY 134, ¶ 14, 405 P.3d 222, 226 (Wyo. 2017)). Aside from the question of the motion's timeliness, intervention as a matter of right presents a question of law that we review de novo. *Id.*

## DISCUSSION

[¶15] "Intervention is . . . 'the process by which a non-party becomes a party to a lawsuit, either as an additional plaintiff or an additional defendant.'" *Tips Up*, 2008 WY 64, ¶ 13, 185 P.3d at 39 (quoting *Halliburton Energy Servs., Inc. v. Gunter*, 2007 WY 151, ¶ 4, 167 P.3d 645, 648 (Wyo. 2007)). W.R.C.P. 24(a)(2) governs intervention as a matter of right when there is no statute permitting intervention. *In re Gustke*, 2024 WY 38, ¶ 18, 545 P.3d 863, 868 (Wyo. 2024). We have summarized the four requirements an applicant must satisfy to intervene as a matter of right under W.R.C.P. 24(a)(2) as follows:

> First, the applicant must claim an interest related to the property or transaction which is the subject of the action. Second, the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest. Third, there must be a showing that the applicant's interest will not be adequately

4

represented by the existing parties. Fourth, the application for intervention must be timely.

*Rodriguez-Williams*, 2024 WY 16, ¶ 9, 542 P.3d at 636 (quoting *In re EHD*, 2017 WY 134, ¶ 12, 405 P.3d at 225–26). "An applicant who fails to meet any of the [requirements] of W.R.C.P. 24(a)(2) is not permitted to intervene as of right." *Id.* (citing *Halliburton*, 2007 WY 151, ¶ 6, 167 P.3d at 648).

## I. The district court properly found CRUSL fails to satisfy requirements one and two because CRUSL lacks a significant protectable interest.

[¶16]  To satisfy the first two requirements, an applicant seeking intervention must have a significant protectable interest. *Tips Up*, 2008 WY 64, ¶ 17, 185 P.3d at 40. CRUSL argues it has a significant protectable interest because its founding members own personal residences in proximity to the state trust land identified in the State's complaint. They argue the State's use of its trust land in contravention of local regulations directly and concretely impacts their interests. The State contends CRUSL has a generalized interest and not a significant protectable interest in the subject action of the case because the issue is whether sovereign immunity prohibits a county from enforcing its land use/development regulations on state lands.

[¶17]  Although the issue involves the enforceability of county regulations on state trust land, "[t]he interest of the intervenor is not measured by the particular issue before the court but is instead measured by whether the interest the intervenor claims is *related to the property that is the subject of the action*." *Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1252 (10th Cir. 2001).[1]  In *Utah Association of Counties v. Clinton*, the Utah Association of Counties filed suit against the United States, then President Clinton, and others, seeking to invalidate a presidential proclamation establishing a national monument. *Id.* at 1248–49. The district court denied various motions to intervene filed by environmental organizations and tourism-related businesses because the issue before the court was the legality of the president's action in creating the monument. *Id.* at 1249.  On appeal, the Tenth Circuit reversed the denial of the motions and held the district court "misperceived the interest inquiry mandated by the rule." *Id.* at 1252–53, 1256.  The Tenth Circuit found the complaint was related to the creation of the monument itself, and thus the subject of the action was the monument. *Id.* at 1252–53. The Tenth Circuit found the intervenors' interest—the monument's continued existence by virtue of their support of its creation, their goal of vindicating their conservationist vision through its preservation, their use of the monument in pursuit of that vision, and their economic stake in its continued

---

[1] "Because the Wyoming Rules of Civil Procedure are patterned after the Federal Rules of Civil Procedure, federal court interpretations of their rules are highly persuasive in our interpretation of the corresponding Wyoming rules." *In re Gustke*, 2024 WY 38, ¶ 25 n.2, 545 P.3d at 870 n.2 (quoting *Baker v. Baker*, 2023 WY 121, ¶ 19, 539 P.3d 412, 416 (Wyo. 2023)).

existence—sufficiently related to the subject matter of the action, the monument, although the issue surrounded the legality of the proclamation establishing the monument. *Id.*

[¶18]  Here, the State references in its complaint that the "matter arises out of [Teton County's] attempt [to] enforce its Land Development Regulations (LDRs) against the Board and its permittees on state trust land located in Teton County."  Although the Board seeks a determination that all counties lack authority to enforce land use/development regulations on all state trust land, it also seeks injunctive relief enjoining Teton County from subjecting the Board and its permittees to abatement proceedings regarding the Parcel.  The property which is the subject of the action is specifically related to state trust lands, the Parcel, located in Teton County.  Thus, the question we must answer regarding the interest requirement under W.R.C.P. 24(a)(2) is whether CRUSL's interest is a significant protectable interest related to the Parcel.

[¶19]  "A significant protectable interest is distinguished from a merely contingent interest, an interest shared by members of the public at large, or a mere concern in the outcome." *Rodriguez-Williams*, 2024 WY 16, ¶ 10, 542 P.3d at 636 (quoting *Tips Up*, 2008 WY 64, ¶ 17, 185 P.3d at 40).  "An applicant seeking intervention of right has the burden of demonstrating a significant protectable interest." *Tips Up*, ¶ 17, 185 P.3d at 40.  CRUSL argues it has a significant protectable interest because its members' personal residences in proximity to the Parcel are being directly impacted by the permittees' authorized uses of the Parcel in contravention of local regulations.  CRUSL suggests those impacts include "deteriorating views, noise, traffic, threats to public health and safety, privacy, water quality, wildlife habitat, economic values, and historic agricultural uses."

[¶20]  To support its argument, CRUSL claims "this Court has recognized that the interests of landowners challenging development regulations on nearby property are sufficiently definite and particularized to establish standing by associations alleging damage to those interests on behalf of its members."  CRUSL relies on two cases, which involve standing in an appeal from an administrative agency decision: *Northern Laramie Range Foundation v. Converse County Board of County Commissioners*, 2012 WY 158, ¶¶ 21–35, 290 P.3d 1063, 1073–76 (Wyo. 2012) and *Northfork Citizens for Responsible Development v. Park County Board of County Commissioners*, 2008 WY 88, 189 P.3d 260 (Wyo. 2008).  We find these cases unpersuasive.  While standing in agency actions involving zoning and/or land use regulations and the interest requirement for intervention overlap in the application of facts and law, standing and intervention are two distinct doctrines. *See, e.g.*, *N. Laramie Range Found.*, 2012 WY 158, ¶ 24, 290 P.3d at 1073 ("An individual having standing must have a definite interest exceeding the general interest in community good shared in common with all citizens.") (citation omitted); *Rodriguez-Williams*, 2024 WY 16, ¶ 10, 542 P.3d at 636 ("A significant protectable interest is distinguished from . . . an interest shared by members of the public at large[.]").  Standing implicates the court's subject matter jurisdiction and involves whether a party is properly situated to assert an issue for judicial determination. *N. Laramie Range Found.*, ¶¶ 22–23, 290 P.3d at 1073.  The

6

Wyoming Administrative Procedure Act confers standing to petition for appellate review of an agency action onto "any person aggrieved or adversely affected in fact by a final decision of an agency in a contested case, or by other agency action or inaction[.]" Wyo. Stat. Ann. § 16-3-114(a). Intervention of right is a court adopted rule that confers party status upon a non-party to permit that "non-party to protect its otherwise-inadequately-represented interest in the action[.]" *In re Gustke*, 2024 WY 38, ¶ 25, 545 P.3d at 869–70 (citing *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1239 (10th Cir. 2012)); W.R.C.P. 24(a)(2).

[¶21]  "[I]ntervention of right is not available to a non-party whose interest in the litigation, rather than being a 'significantly protectable interest,' is merely 'contingent,' or reflects no more than a 'concern' in the outcome." *Halliburton*, 2007 WY 151, ¶ 6, 167 P.3d at 648. In *Concerned Citizens of Spring Creek Ranch v. Tips Up*, the developer of a subdivision brought an action for declaratory judgment and injunctive relief against the homeowners' association and architectural committee, alleging they failed to act in good faith or with due diligence in reviewing the preliminary architectural plan. 2008 WY 64, ¶¶ 3–7, 185 P.3d at 37–38. Landowners within the subdivision sought to intervene, claiming they had a significant protectable interest in the underlying litigation because their lands are benefitted and burdened by the covenants, conditions, restrictions, and agricultural design guidelines of the subdivision. *Id.* at ¶ 18, 185 P.3d at 40. The district court denied the motion to intervene. *Id.* at ¶ 10, 185 P.3d at 38. On appeal, we affirmed the denial because the issue before the court did not involve the enforcement of the covenants, conditions, and restrictions. *Id.* at ¶¶ 18–19, 185 P.3d at 40. We stated although the covenants provided owners within the subdivision with "the right to enforce by any proceeding at law or in equity all restrictions and conditions imposed by . . . any rules or regulations of the Architectural Committee[,]" the pending matter involved the actions of the homeowner's association and architectural committee, not the enforcement of the covenants. *Id.* We held the landowners had a significant protectable interest in the enforcement of the covenants, conditions, and restrictions, but any impact the pending suit might have on their property interest was contingent because their interest was based on the outcome of the underlying case. *Id.*

[¶22]  Much like the landowners in *Tips Up*, the members of CRUSL living in proximity to the Parcel may have an interest in ensuring the local regulations are enforced.[2] However,

---

[2] We recognize there is a distinction between a private citizen's/association's rights regarding the enforcement of covenants in a private action as seen in *Tips Up* versus the enforcement of zoning regulations in an administrative appeal or private action. *See generally Brazinski v. Bd. of Cnty. Comm'rs of Teton Cnty.*, 2024 WY 40, ¶¶ 28–38, 546 P.3d 545, 553–55 (Wyo. 2024) (discussing private lot owners' rights to bring a declaratory judgment action to protect their contractual rights under a subdivision plat and judicial review of whether a county followed its rules and regulations when amending a plat); *see also Rafter J Ranch Homeowner's Ass'n v. Stage Stop, Inc.*, 2024 WY 114, ¶¶ 14–15, 558 P.3d 562, 568–69 (Wyo. 2024) (detailing the decision in *Brazinski* only related to the commissioner's zoning decision and not the enforcement of contractual rights under a plat). Generally, a private citizen/association must exhaust

any interest of those members is contingent upon whether or not the Teton County land development regulations are even enforceable on the Parcel because of the State's sovereign immunity. CRUSL's avenue to protect those interests only becomes vested if the State is subject to county land use/development regulations on state trust land through abatement proceedings, and/or through review of any agency action under the Wyoming Administrative Procedure Act, Wyoming Statute § 16-3-114. The district court properly held they failed to establish a significant protectable interest because CRUSL's interests are contingent interests. *See Tips Up*, 2008 WY 64, ¶ 19, 185 P.3d at 40. Because CRUSL failed to establish the first requirement for intervention of right, it also failed to establish the second requirement, a showing the action may impair or impede its ability to protect that interest. *See id.* at ¶¶ 17–19, 185 P.3d at 40. CRUSL therefore failed to meet its burden of satisfying the first two requirements for intervention of right, and the district court did not err in denying its request to intervene.

## II. Teton County adequately represents any interests of CRUSL in the underlying action.

[¶23] Although we find any interest CRUSL may have in the action is contingent, even if we assume CRUSL has a significant protectable interest in the proceedings and the first two requirements of intervention of right are met, CRUSL still could not intervene as a matter of right because Teton County adequately represents CRUSL's interests. To intervene as a matter of right, CRUSL must show that its "interests are not adequately represented by the existing parties." *Tips Up*, 2008 WY 64, ¶ 20, 185 P.3d at 40; *Rodriguez-Williams*, 2024 WY 16, ¶ 9, 542 P.3d at 636. When a proposed intervenor and an existing party have the same objective, there is a presumption of adequate representation. *Tips Up*, ¶ 20, 185 P.3d at 41 (quoting *Or. Env't Council v. Or. Dep't of Env't Quality*, 775 F. Supp. 353, 359 (D. Or. 1991)). To overcome this presumption, CRUSL must make a concrete showing of circumstances demonstrating Teton County's representation is inadequate. *City of Stilwell, Okla. v. Ozarks Rural Elec. Coop. Corp.*, 79 F.3d 1038, 1043 (10th Cir. 1996) (quoting *Bottoms v. Dresser Indus., Inc.*, 797 F.2d 869, 872 (10th Cir. 1986)); 59 Am. Jur. 2d *Parties* § 170; *see also Rodriguez-Williams*, ¶ 39, 542 P.3d at 642 (quoting *Tri-State Generation & Transmission Ass'n, Inc. v. N.M. Pub. Regul. Comm'n*, 787 F.3d 1068, 1073 (10th Cir. 2015)) (discussing the burden of making a concrete showing to overcome the presumption of adequate representation in the context of permissive intervention).

[¶24] Teton County filed abatement proceedings against the State's permittees seeking to enforce all its regulations on Basecamp's and Wilson Investments' temporary uses of the Parcel. Given Teton County's attempts to enforce its own regulations and because Teton

---

administrative remedies when enforcing zoning regulations before bringing a private action unless the action "concerns the validity and construction of agency regulations, or . . . the constitutionality or interpretation of a statute upon which the administrative action is, or is to be[,] based." *Bonnie M. Quinn Revocable Tr. v. SRW, Inc.*, 2004 WY 65, ¶¶ 9–21, 91 P.3d 146, 148–52 (Wyo. 2004) (citing *Hirschfield v. Bd. of Cnty. Comm'rs of Cnty. of Teton*, 944 P.2d 1139, 1142 (Wyo. 1997)).

County and CRUSL share the same goal—enforcing all of Teton County's land use regulations on the Parcel—we presume Teton County adequately represents CRUSL's interest. *See Rodriguez-Williams*, 2024 WY 16, ¶ 40, 542 P.3d at 642 (presuming adequacy of representation when the proposed intervenors and the State shared the same goal of enforcing and upholding the constitutionality of a State law); *Tri-State Generation*, 787 F.3d at 1074 (finding adequacy of representation based in part on the fact the defendant was represented by the state attorney general "who is obligated by law to defend the constitutionality of the statute"); *Stuart v. Huff*, 706 F.3d 345, 351 (4th Cir. 2013) ("[W]hen a statute comes under attack, it is difficult to conceive of an entity better situated to defend it than the government.").

[¶25] CRUSL argues it met its burden of showing inadequacy of representation by Teton County because Teton County will "be incentivized to advocate (or settle) in a manner that will not protect the interests of CRUSL or its members." CRUSL relies on Tenth Circuit cases suggesting that if a government agency is required to consider both public and private interests, then it is impossible for that agency to adequately represent the private interest. *See, e.g.*, *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1200 (10th Cir. 2010) ("Where a government agency may be placed in the position of defending both public and private interests, the burden of showing inadequacy of representation is satisfied."). Although the Tenth Circuit has recognized the clash between a government agency and environmental organizations when public and private interests are involved, it has "held that if a case presents only a single issue on which the agency's position is quite clear, and no evidence suggests that position might be subject to change in the future, then representation may be adequate." *W. Energy All. v. Zinke*, 877 F.3d 1157, 1168 (10th Cir. 2017) (citing *Kane Cnty., Utah v. United States*, 597 F.3d 1129, 1134–35 (10th Cir. 2010) (*Kane County I*). Additionally, the Tenth Circuit Court of Appeals just recently affirmed an environmental group's interest was adequately represented by the government when the only issue to be resolved was who holds title to several roads, the United States or a local county. *Kane Cnty. v. United States*, 94 F.4th 1017, 1034–35 (10th Cir. 2024) (*Kane County IV*); *Kane County I*, 597 F.3d at 1133–35.

[¶26] In *Kane County I*, Kane County, Utah, filed a complaint against the United States under the Quiet Title Act, seeking to quiet title to several roads. 597 F.3d at 1130–31. They alleged under a reconstruction-era law Kane County "had accepted . . . rights-of-way for these . . . roads on public lands not reserved for public uses." *Id.* They further alleged they had expended public funds to construct and maintain these roads as public thoroughfares. *Id.* An environmental group advocating for the protection of wilderness study areas sought to intervene as a matter of right as a defendant in support of the United States, seeking to preserve the wilderness characteristics of the lands due to the risks the roads being open to the public may have on preservation. *Id.* at 1132–33. The district court denied the request to intervene. *Id.* at 1132. On appeal, the Tenth Circuit upheld the denial and found "the only issue to be resolved was whether the United States or Kane County held title to the roads at issue." *Id.* at 1134–35. It held the United States adequately represented the

environmental group's interest because the United States had "displayed no reluctance in [the] proceedings . . . to claim full title to the roads" at issue, and the environmental group provided no basis to predict the government would fail to present an argument on the merits that the environmental group would make. *Id.*; *cf. Kane County IV*, 94 F.4th at 1032–34 (affirming the holding of *Kane County I* that there is adequate representation on the issue of who holds title to the roads but finding the United States did not adequately represent the environmental group's interests on the issue of the scope of those roads); *accord Kane Cnty., Utah v. United States*, 928 F.3d 877, 894 (10th Cir. 2019) (*Kane County III*) ("SUWA and the United States ha[ve] identical interests in the title determination, they do not on scope.").

[¶27]  Here, the only issue pending is whether state trust lands are subject to local land use/development regulations in all counties.  Although CRUSL argues Teton County is incentivized to advocate in a manner that does not ensure enforcement of all its rules and regulations on the Parcel, the record demonstrates Teton County followed its own rules and regulations for its own uses on state trust land, and it has continually attempted to enforce its regulations on the Parcel.  The record indicates the Teton County Road and Levee Department had a temporary use permit on state trust lands in Teton County for a rock stockpiling site, and that use possibly was in non-conformance with county land use regulations.  Although the use was in non-conformance with Teton County's regulations, Teton County applied for permission through its own land use rules to have the stockpile on state trust land because the stockpile was for an emergency use to stop flooding in the area, which was deemed important by the Army Corps of Engineers.

[¶28]  The record indicates Teton County followed its own rules and regulations when seeking a variance on state trust lands.  It further indicates Teton County fully intends to ensure all its rules and regulations are enforceable on all state trust land in Teton County. Teton County appealed the initial issuance of the temporary use permits by the Board, and when that appeal was dismissed, it filed abatement actions against the Office of State Lands and Investments, Basecamp, and Wilson Investments.  Because the record indicates Teton County is attempting to fully enforce its land development regulations on state trust lands within Teton County, and Teton County follows its own land development regulations, we are unpersuaded by CRUSL's argument that Teton County is incentivized to advocate in a manner that does not adequately represent CRUSL's interests.  We are instead persuaded by the analysis of *Kane County I* and find Teton County adequately represents CRUSL's interests because Teton County has displayed no reluctance to fully enforce its land development regulations. *See Kane County I*, 597 F.3d at 1134–35.  CRUSL failed to meet its burden of overcoming the presumption of adequate representation and establishing it satisfies the third requirement for intervention as a matter of right.  The district court thus did not err in denying CRUSL's motion to intervene.

10

## CONCLUSION

[¶29] CRUSL failed to meet its burden establishing the first three requirements to intervene as a matter of right under W.R.C.P. 24(a)(2). CRUSL does not have a significant protectable interest in the underlying litigation that would be impaired or impeded by the action, and Teton County adequately represents CRUSL's interest. The district court did not err when it denied CRUSL's motion to intervene as a matter of right. Affirmed.